[Civ. No. 11235. Second Appellate District, Division One.—June 2, 1937.]

BENEDITA VITALI et al., Appellants, v. RAY H. STRAIGHT et al., Respondents.

L. V. Beaulieu for Appellants.

Nourse, Betts & Jones for Respondents.

HOUSER, P. J.—Plaintiffs appeal both from a judgment which was rendered on the return of a verdict in favor of defendants and from an order by which plaintiffs' motion for a new trial was denied. The action was brought by Benedita Vitali, both in her individual capacity and as guardian for her and her former husband's minor children, and by Mary Vitali, for damages which were alleged to have been sustained by them by reason of the wrongful death of Benedita Vitali's former husband, which resulted from a collision that occurred between him personally and an automobile that was operated by defendant Ray H. Straight. The accident occurred at night, at a point where a main thoroughfare was intersected on one side by one street and on the other side by two streets, neither of such intersecting streets being at a right angle with the main thoroughfare. The night was dark, but clear. A portion of the main thoroughfare was paved; and immediately preceding the happening of the accident, and until he was at a distance of from 40 to 45 feet from the point where the accident occurred, the said defendant was driving his automobile at a rate of speed estimated at from 40 to 45 miles per hour. The brakes, the horn, and the headlights of the automobile were "in good working order", and the headlights were lighted. Other than the defendants, no living person witnessed the happening of the accident. But, as was testified by defendant Ray H. Straight, although he

could see "a half a mile", he did not see Vitali until his automobile was within 40 to 45 feet from him, at which time Vitali was running diagonally across the main highway, with his back turned partly toward the approaching automobile, and at a point nearly in the center of what might be termed the intersecting streets. Immediately upon discovering Vitali's position, the said defendant sounded the horn of the automobile, applied the brakes thereof, and "swerved" the automobile to the right. It skidded "something like thirty feet". The speed of the automobile was slowed, so that at the instant when the impact between it and Vitali took place, the automobile was traveling at about the rate of from 20 to 25 miles per hour. From the time when the said defendant first saw Vitali until that when the collision occurred, the said defendant did not see the face of Vitali. In that regard, the said defendant testified as follows: "At the point of collision he had his (Vitali's) back to me with his right hand out this way, I would say in this position (indicating). Q. Did you ever see the deceased's face, or any portion of his face? A. Before the accident, you mean? Q. Yes. A. I saw the back of his neck. Q. When did you see that? A. Just before we struck. . . . He seemed to increase his speed." Said defendant also testified, in substance, that: "My lights were turned on for country driving. Vitali was running in rather an unbalanced condition, I would say, sort of sideways. It was hard to see, but it looked like he had something under his left arm or maybe in his left hand. After the collision occurred, one of the officers came up and found several pieces of glass on the highway, part of which was colored glass. It was curved. . . ."

■ From a consideration of the foregoing situation, it would seem clear enough that defendant Ray H. Straight was guilty of negligence; but even so, Vitali's negligence in the premises was equally apparent. Although, by the provisions of the governing statute, one may be permitted legally to drive an automobile at a high rate of speed, nevertheless, he does so at his peril, and at all times must have the automobile under such control in regard to speed that he may bring it to a stop, if necessary, in order to avoid injuring another who also is using the highway. On the other hand, the intersection where the accident occurred not having "a marked crosswalk", in crossing the main thoroughfare Vitali not

only was obliged to "yield the right of way" to the automobile of defendant, but also at all times was required to exercise due care in his use of the highway. (Sec. 562, Vehicle Code.) It is manifest that he made no effort to do either, and that his failure in that regard contributed proximately to the happening of the accident. Consequently, plaintiffs herein could recover no damages, however much they and the minor children may have suffered by reason of the death of Vitali.

■ Appellants direct attention to the fact that several of the instructions which at the request of defendants were given to the jury were objectionable, in that they were not only argumentative, but that in some respects they were so couched that the jury may have been improperly impressed by them. But assuming that situation to be correct, the facts hereinbefore narrated are such that had such specified errors not been committed, in any event the contributory negligence of Vitali would have precluded the rendition of a legal judgment in favor of plaintiffs. In such circumstances, the provisions of section 4½ of article VI of the Constitution must be given application.

■ Appellants also complain that, although so requested by plaintiffs, the trial court refused to give to the jury certain instructions which correctly stated the law with respect to the doctrine known as "the last clear chance". But taking the facts of the case into consideration, this court is convinced that the law to which appellants refer has no proper application thereto, and consequently that no error was committed by the trial court in refusing plaintiffs' request.

The judgment is affirmed. The appeal from the order denying the motion for a new trial is dismissed.

York, J., and Doran, J., concurred.